**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| PHILLIP ROSENBLUM, | ) | NO. SA CV 18-966-JVS(E) |
| | ) | |
| Plaintiff, | ) | ORDER: |
| | ) | |
| | ) | 1.  DENYING MOTION TO DISMISS FOURTH |
| v. | ) |     AMENDED COMPLAINT; AND |
| | ) | |
| JOSEPH BLACKSTONE, et al., | ) | 2.  GRANTING REQUEST FOR SUBSTITUTION |
| | ) |     OF FICTITIOUS DEFENDANTS |
| Defendants. | ) | |
| _____ | ) | |

    Presently before the Court are: (1) a "Motion to Dismiss, etc."
("Motion to Dismiss"), filed November 6, 2019 by Defendants
Blackstone, Porter, Serrano, Owens, Arredondo, Walewha, Moon and
Villa; and (2) a "Request for Substitution of Parties" filed
November 18, 2019 by Plaintiff.  For the following reasons: (1) the
Motion to Dismiss, which is deemed directed to the Fourth Amended
Complaint, is denied; and (2) the Request for Substitution of Parties
is granted.

///

///

///

**BACKGROUND**

Plaintiff, a state prisoner, filed this civil rights action pursuant to 42 U.S.C. section 1983 on June 1, 2018.  Plaintiff's claims arise out of his confinement at the Orange County Jail in 2017. Despite the caption of the original Complaint (which names the "Orange County Sheriff Dept."), the body of the original Complaint identified the Defendants as Orange County Sheriff's Deputies Blackstone, Smith, Porter, Serrano, Owens and Arredondo and five fictitious "John Doe" Defendants, all sued in their individual capacities only.  The original Complaint alleged claims for: (1) asserted "deliberate indifference" to the risk of assault by other inmates (based on alleged failure to protect Plaintiff from "set-up fights" assertedly occurring on July 4, 2017 (two incidents), August 28, 2018 and September 23, 2017); (2) asserted excessive force allegedly occurring on those same three dates; and (3) an alleged "campaign of harassment."

On July 9, 2018, the Court issued an "Order Dismissing Complaint with Leave to Amend."  On August 9, 2018, Plaintiff filed a First Amended Complaint, identifying the Defendants as Deputies Blackstone, Smith, Porter, Serrano, Owens, Arrendondo [sic] and three fictitious "John Doe" Defendants, again all sued in their individual capacities only.  The First Amended Complaint contained two federal constitutional claims for alleged deliberate indifference to the risk of harm from other inmates and alleged excessive force.

///

///

On November 27, 2018, Defendants Blackstone, Porter, Serrano, Owens and Arredondo filed an Answer to the First Amended Complaint. On December 13, 2018, the Court issued an Order dismissing the action as against the unserved Defendant Smith without prejudice.

Thereafter, the parties conducted discovery.  Among other things, Defendants sought and obtained an order permitting them to depose Plaintiff (see ECF Docket Nos. 29, 33).  Defendants also served document requests and interrogatories on Plaintiff.[1]

On February 25, 2019, Plaintiff filed a "Motion to Amend Pleadings," accompanied by a proposed Second Amended Complaint, essentially seeking leave to amend to add as additional Defendants Sergeants Walewha and Martinez and two more fictitious "John Doe" Defendants.  The proposed Second Amended Complaint purported to contain two claims: a combined constitutional and state law negligence claim based on the failure to protect allegations and a combined constitutional and state law negligence claim based on the excessive force allegations.  On March 13, 2019, Defendants Blackstone, Porter, Serrano, Owens and Arredondo filed an Opposition to the "Motion to Amend Pleadings," arguing among other things that: (1) the proposed amendment allegedly was untimely and would cause undue and prejudicial delay; (2) the state law claims contained in the proposed Second Amended Complaint allegedly were insufficient and untimely under California's Government Claims Act; (3) the proposed Second Amended

---

[1]   According to Defendants' March 13, 2019 Opposition to Plaintiff's "Motion to Amend Pleadings," Defendants served document requests and interrogatories on Plaintiff on December 23, 2018 (see ECF Docket No. 55, p. 4).

3

Complaint assertedly failed to allege Eighth Amendment claims as against the newly identified Defendants; and (4) the newly identified Defendants allegedly were entitled to qualified immunity.  In opposing Plaintiff's motion to amend, Defendants Blackstone, Porter, Serrano, Owens and Arredondo did not contend that the <u>federal</u> claims against the existing Defendants were insufficient.

On March 26, 2019, the Magistrate Judge issued a Minute Order granting Plaintiff's "Motion to Amend Pleadings" and ordering the Second Amended Complaint to be filed.

On April 12, 2019, Plaintiff filed a "Request for Substitution of Parties," seeking leave to substitute Deputy Moon for Defendant John Doe #4 and Sergeant Villa for Defendant John Doe #5 in the Second Amended Complaint.

On April 25, 2019, Defendants Blackstone, Porter, Serrano, Owens and Arredondo filed a "Motion to Dismiss and/or Strike Plaintiff Phillip Rosenblum's State Law Claims for Relief, etc."  This motion challenged the sufficiency of only the state law claims contained in the Second Amended Complaint, on the grounds that: (1) the state law claims allegedly were untimely; (2) Plaintiff assertedly had failed to allege a "valid statutory basis" for the state law claims; (3) the Court allegedly should decline supplemental jurisdiction over the state law claims.  Again, the moving Defendants did <u>not</u> challenge the sufficiency of the <u>federal</u> claims pleaded against them in the Second Amended Complaint.

4

On April 30, 2019, Defendants Blackstone, Porter, Serrano, Owens and Arredondo filed an Opposition to Plaintiff's "Request for Substitution of Parties." This Opposition argued, <u>inter alia</u>, that the Second Amended Complaint failed to state a federal claim against proposed Defendants Moon and Villa because: (1) Plaintiff assertedly alleged only a claim for mishandling and/or denial of grievances; (2) Plaintiff allegedly had no constitutional right to a particular classification, custody level or housing; and (3) proposed Defendants Moon and Villa allegedly were entitled to qualified immunity.

On May 29, 2019, Defendant Joses Walewha filed a "Motion to Dismiss and/or Strike Plaintiff Phillip Rosenblum's Claims Against Defendant Walewha, etc." Such motion alleged that: (1) Plaintiff's state law claims allegedly were untimely, insufficiently pled under the Government Claims Act and failed to plead "a proper statutory basis"; (2) Plaintiff's allegations that Walewha assertedly failed to respond to and/or mishandled a grievance purportedly failed to alleged a due process claim; (3) Plaintiff allegedly had no constitutional right to a particular classification, custody level or housing; and (4) Defendant Walewha allegedly was entitled to qualified immunity. Defendant Walewha did <u>not</u> argue that the Second Amended Complaint failed sufficiently to allege federal claims against Walewha for failure to protect or excessive force.

In the meantime, discovery continued. Plaintiff moved to quash a subpoena for production of documents, which the Magistrate Judge denied in an order which nonetheless limited the scope of the subject subpoena (ECF Docket Nos. 94, 119). Defendants Blackstone, Porter,

Serrano, Owens, Arredondo and Walewha unsuccessfully sought a
protective order relieving Defendants of the obligation to respond to
written discovery requests previously propounded by Plaintiff or,
alternatively, prohibiting Plaintiff from requesting any further
discovery in the future (ECF Docket No. 108, 127).  Plaintiff filed a
motion to compel discovery and another motion to quash a subpoena (ECF
Docket Nos. 120, 121, 124).

Thereafter, on August 1, 2019, the Court issued an "Order, etc.":
(1) denying the motion to dismiss the Second Amended Complaint filed
by Defendants Blackstone, Porter, Serrano, Owens and Arredondo;
(2) denying Defendants' motions to strike; (3) dismissing the state
law claims against Defendant Walewha without leave to amend as
untimely; (4) denying Defendant Walewha's motion to dismiss on the
ground of qualified immunity; (5) rejecting Defendants' argument that
the Court should decline to exercise supplemental jurisdiction at this
stage of the litigation; and (6) granting Plaintiff's request to
substitute Defendants Moon and Villa in place of John Doe #4 and John
Doe #5, respectively, in the Second Amended Complaint.  Among other
things, the Court rejected Defendant Walewha's argument that Plaintiff
had failed to allege a due process claim based on an asserted denial
of grievances, observing that Plaintiff's claim was based on
allegations that Walewha assertedly exhibited deliberate indifference
to Plaintiff's safety by allegedly denying the grievance (see "Order,
etc.," filed August 1, 2019 at p. 20).  The Court also observed that
Defendant Walewha had not challenged the sufficiency of the Second
Amended Complaint to plead an Eighth Amendment violation against
Walewha (id.).  The Court ordered the moving Defendants to file

Answers to the Second Amended Complaint (with the exception of the portions of the Second Amended Complaint alleging state law claims against Walewha).

On August 19, 2019, Defendants Blackstone, Porter, Serrano, Owens, Arredondo and Walewha filed an Answer to the Second Amended Complaint.  Meanwhile, as the docket reflects, the parties continued to litigate discovery issues.

On September 20, 2019, Plaintiff filed another "Motion to Amend Pleadings," seeking to file a Third Amended Complaint.  Plaintiff sought to add as new Defendants the Orange County Sheriff's Department and sheriff's officials Van Patten, Castro, Longrob, Coleman, Luu, Chaviro and Laquian, based at least in part on information Plaintiff allegedly had received in discovery.  The proposed Third Amended Complaint asserted claims against six fictitious "John Doe" Defendants.  The proposed Third Amended Complaint also separated the federal claims from the state law claims, alleging four claims for relief (two federal constitutional claims and two state law negligence claims based on the alleged facts underlying the constitutional claims).

On October 16, 2019, Defendants Blackstone, Porter, Serrano, Owens, Arredondo and Walewha filed an opposition to the "Motion to Amend Pleadings."  The moving Defendants accused Plaintiff of undue delay, bad faith and a dilatory motive in seeking leave to amend.  The moving Defendants also argued that amendment would prejudice the existing and proposed Defendants.  The moving Defendants further

argued that amendment would be futile because: (1) any claim against the Orange County Sheriff's Department as a party allegedly would be untimely and would represent an improper attempt to "plead a dismissed party"; and (2) the claims against the new Defendants allegedly were untimely.  The opposing Defendants did not argue that the proposed Third Amended Complaint failed to put Defendants on notice as to the nature of Plaintiff's claims or that the proposed Third Amended Complaint otherwise failed sufficiently to allege federal or state law claims.

On October 18, 2019, the Magistrate Judge issued a Minute Order granting Plaintiff's "Motion to Amend Pleadings" and ordering the Third Amended Complaint to be filed.  On that date the Magistrate Judge also issued an "Order Directing Service of Process of Third Amended Complaint, etc.," directing the United States Marshal to effect service of process on the newly added Defendants.[2]

On November 6, 2019, Defendants "Blackston,"[3] Porter, Serrano, Owens, Arredondo, Walewha, Moon and Villa filed a "Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to FRCP Rule 8 and

---

[2]     As of the date of this Order, no proofs of service reflecting service of the Summons and Third Amended Complaint on the Defendants added in the Third Amended Complaint have been filed, and those Defendants have not appeared in the action.

[3]     The caption and body of this document spell Defendant Blackstone's name as "Blackston."  Defendants contend Plaintiff erroneously sued Blackston as "Blackstone" (see Motion to Dismiss, p. 7 n.1).  Yet, Defendants have spelled this Defendant's name as "Blackstone" for over a year and have continued periodically to do so even after the filing of the Motion to Dismiss.  Given these confusing circumstances, the Court uses the name "Blackstone" herein.

1    (12(b)(6), etc." (the pending "Motion to Dismiss").

2

3        On November 18, 2019, Plaintiff filed a "Request for Substitution

4    of Parties," seeking to substitute Sergeant A. Montoya for Defendant

5    John Doe #4 and Sergeant D. Braham for Defendant John Doe #5.  Also on

6    November 18, 2019, Plaintiff filed a "Declaration in Support of

7    Substitution of Corrected Third Amended Complaint, etc.," accompanied

8    by a proposed corrected "Third Amended Complaint."  On December 2,

9    2019, Plaintiff filed an "Opposition to Defendants['] Motion to

10   Dismiss Plaintiff's Third Amended Complaint."

11

12       On December 10, 2019, Defendants "Blackstone [sic]," Porter,

13   Serrano, Owens, Arredondo, Walewha, Moon and Villa filed "Defendants'

14   Non-Opposition to Plaintiff's to [sic] Substitute Corrected Third

15   Amended Complaint."  Also on December 10, 2019, Defendants "Blackstone

16   [sic]," Porter, Serrano, Owens, Arredondo, Walewha, Moon and Villa

17   filed "Defendants' Opposition to Plaintiff's Motion to Substitute A.

18   Montoya and D. Braham, etc."

19

20       On December 12, 2019, the Magistrate Judge ordered that the

21   "Third Amended Complaint" attached to Plaintiff's "Declaration in

22   Support of Substitution of Corrected Third Amended Complaint etc.," be

23   filed as Plaintiff's Fourth Amended Complaint.  The Magistrate Judge

24   also ordered that Defendants' "Motion to Dismiss Plaintiff's Third

25   Amended Complaint, etc.," and Plaintiff's "Opposition, etc." thereto,

26   be construed, respectively, as Defendants' Motion to Dismiss the

27   Fourth Amended Complaint and Plaintiff's Opposition thereto.

28                   **SUMMARY OF ALLEGATIONS OF FOURTH AMENDED COMPLAINT**

Plaintiff alleges:

**Claim One (Failure to Protect from Inmate Assault)**

In May of 2017, Plaintiff returned to the Orange County Jail "for a parole violation" (Fourth Amended Complaint, attachment, ¶ 2).  Plaintiff told a housing deputy (not a Defendant) that Plaintiff had "enemy concerns" regarding multiple jail inmates who previously had attempted to, or wanted to, assault Plaintiff (id.).  Because of these "enemy concerns," the deputy housed Plaintiff in "J-Med," a protective unit where Plaintiff would be celled safely behind protective glass, rather than in a "Main Jail" cell with bars that inmates could "fight through" (id.).

On June 30, 2017, deputies acting in reckless disregard for Plaintiff's safety moved Plaintiff into the Main Jail, which was filled with Plaintiff's enemies (id., ¶ 3).  Initially, Plaintiff was housed on the tier below Michael Baker, one of Plaintiff's known enemies (id.).  Baker told everyone Plaintiff was a "rat" because Plaintiff was a confidential informant in Baker's case (id.).

On June 2, 2017 and June 3, 2017, Plaintiff filed grievances seeking to be rehoused in J-Med away from enemies in the Main Jail whom Plaintiff listed in the grievances, including Baker (id., ¶ 4).  The July 2, 2017 grievance was hand delivered to Defendant Moon, who acted with "reckless

disregard" and "deliberate indifference" by failing to turn
in the grievance, so that the grievance was never answered
(id.).  On July 3, 2017, Plaintiff resubmitted the grievance
(id.).  Defendant Villa acted with "reckless disregard" and
"deliberate indifference" by simply commenting on the
"screen out response" that Plaintiff had requested to be
housed in "med J" (id.).  On July 4, 2017, Plaintiff was
rehoused in the "direct vicinity" of Plaintiff's "known
enemies" (id.).

**The First "Set-up Fight"**

The first "set-up fight" occurred on the morning of
July 4, 2017 (id.).  At that time, Plaintiff was housed on
the same tier and in the direct vicinity of his known enemy,
Alfredo Aquino (id.).[4]  In October of 2016, Aquino had
attempted to "razor slice" Plaintiff through the Main Jail
cell bars and had thrown bodily fluids on Plaintiff (id.).
Defendant John Doe #1, a classification deputy, selected
Plaintiff's housing to be in the proximity of this known
enemy (id.).  Defendant John Doe #4, a supervisor, approved
the housing decision (id.).

///

Upon entering the unit, Plaintiff tried to tell the
unit deputy, Defendant Coleman, that Plaintiff had multiple

---

[4]     Identified as "McKinno" in Plaintiff's earlier
pleadings (see Second Amended Complaint, attachment ¶ 5; First
Amended Complaint, attachment, ¶ 5.

enemies in the Main Jail (id.).  Acting with "reckless
disregard" and "deliberate indifferen[ce]," Coleman ordered
Plaintiff into Main Jail housing (id.).  As Plaintiff
approached Aquino's cell, a fight broke out between
Plaintiff and Aquino (id.).

**The Second "Set-up Fight"**

The second "set-up fight" occurred on the evening of
July 4, 2017 (id., ¶ 6).  Plaintiff was rehoused on the same
tier in the direct vicinity of his known enemies "J.J.
Renteria (Eric Salinas)"[5] and Matthew Drogno (id.).  In
October of 2016 Renteria had attempted to "razor slice"
Plaintiff through the cell bars and Drogno had attempted to
assault Plaintiff through the cell bars (id.).  Defendant
John Doe #2, a classification deputy, selected Plaintiff's
housing to be with his "known enemies," and Defendant John
Doe #5, a supervisor, approved this housing decision (id.).

On the evening of July 4, Plaintiff attempted to tell
the deputy in charge of the unit, Defendant Porter, that
Plaintiff had multiple enemies in the Main Jail (id.).
Porter nevertheless acted with "reckless disregard" and
"deliberate indifferen[ce]" by ordering Plaintiff into Main
Jail housing (id.).  When Plaintiff approached Renteria's

---

[5]     Identified as "Salinas" in Plaintiff's earlier
pleadings (see First Amended Complaint, attachment ¶ 6; Second
Amended Complaint, attachment ¶ 6).

cell, a fight broke out almost immediately between Renteria and Plaintiff (id.).  Drogno intervened and hit Plaintiff multiple times on the head with a homemade stick resembling a "mini-bat" or pipe (id.).

**The Third "Set-up Fight"**

The third set-up fight occurred on the morning of August 28, 2017 (id., ¶ 10).[6]  Previously, on July 16, 2017, Plaintiff had submitted a grievance to Defendant Van Patten, alleging that inmate Raymond Boykin had made intimidating remarks to Plaintiff and had harassed Plaintiff by pushing cardboard penises in front of Plaintiff's cell door and by filling out fake medical slips in Plaintiff's name claiming Plaintiff was suicidal and was threatening an officer (id.).  Van Patten screened out the grievance and gave it to Defendant Martinez, who returned it to Plaintiff on August 6, 2017, saying that the grievance did not make sense (id.).  Martinez also mocked Plaintiff's grievance on July 26, 2017, telling Plaintiff "how come you don't feel safe behind your door, your sentences don't make sense, do you want me to read it out loud" (id.).

Also previous to the August 28, 2017 "set-up fight," on

---

[6]      Although Plaintiff refers to the August 28, 2017 fight as the "fourth" fight and the September 23, 2017 fight as the "third" fight (see Fourth Amended Complaint, attachment ¶ 10), the Court recites Plaintiff's allegations in chronological order for greater clarity.

August 24, 2017 Plaintiff had engaged in a verbal altercation with Boykin ("aggressive trash talking") as a result of which Defendant Blackstone had yanked Plaintiff by the shirt collar into a nearby hallway (id.).

On August 28, 2017, Plaintiff was being escorted to court with Plaintiff's known enemy Boykin (id.). Plaintiff was cuffed behind his back (id.). Boykin was in waist chains, "making striking an availability for him" (id.). Defendant Blackstone allowed Boykin to stand behind Plaintiff in an elevator, then walked away and left the two inmates in the elevator unmonitored (id.). Boykin sliced Plaintiff's forearm with a razor blade (id.). Plaintiff then turned and kicked Boykin (id.). Blackstone intervened, but ultimately let go of Plaintiff and walked away, impliedly authorizing the fight to continue (id.).

**The Fourth "Set-up Fight"**

The fourth "set-up fight" occurred on the morning of September 23, 2017 between Plaintiff and his "known enemy" Michael Baker (id., ¶ 7). Between June 30, 2017 and July 3, 2017, Baker had called Plaintiff a "rat" multiple times and had made threatening remarks (id.). On July 16, 2017, Defendant Van Patten acted with "deliberate indifference" and "reckless disregard" by failing to document that Baker was Plaintiff's enemy or that Plaintiff had told Van Patten that Plaintiff "had been set-up to fight other inmates in

the jail" (id.).  Furthermore, although Plaintiff had spoken
with Defendant Arredondo several times prior to the
September 23, 2017 incident, Arredondo acted with
"deliberate indifference" and "reckless disregard" by
failing to document that Baker was Plaintiff's enemy (id.).
Although Plaintiff told Defendants Luu, Chaviro, Laquian and
Castro that Plaintiff had multiple enemies in the Main Jail,
these Defendants nevertheless caused Plaintiff to be
rehoused on a tier with Plaintiff's "known enemy" Michael
Baker (id.).  Defendant John Doe #3, a classification
deputy, and John Doe #6, a supervisor, allowed Plaintiff to
be housed with his known enemy (id.).

On September 12, 2017, Defendant Walewha disregarded
Plaintiff's grievance requesting not to be placed in Baker's
vicinity due to the potential for violence (id.).  The acts
of Defendants Moon and Villa in mishandling Plaintiff's
grievances renders them liable for the September 23, 2017
fight as well as the July 4, 2017 fights because Plaintiff
referred to Baker in the grievances (id., ¶ 8).

One day before the fight, on September 22, 2017,
Defendants Arredondo and Owens attempted to rehouse
Plaintiff with known enemies, but Plaintiff "refused to go"
(id., ¶ 9).  On September 23, 2017, as Plaintiff approached
Baker's cell, a fight broke out almost immediately between
Plaintiff and Baker (id., ¶ 7).

**Claim Two (Excessive Force)**

### The First Incident

On July 4, 2019, after Plaintiff's fight with Renteria and Drogno, Defendants Porter, Longrob, Serrano and Smith restrained Plaintiff (id., ¶ 12).[7]  While these Defendants were handcuffing Plaintiff (who was lying face down on the ground), these Defendants applied "breaking pressure" to Plaintiff's hands and feet, causing "the feeling of a fracture" in Plaintiff's right wrist and nerve damage to Plaintiff's right thumb which lasted six weeks (id.). Plaintiff also was hit in the head off camera while being escorted down the stairs (id.).  On camera, Plaintiff was slammed face first into the wall (id.).

### The Second Incident

After inmate Boykin sliced Plaintiff with a razor on August 28, 2017, Plaintiff kicked Boykin (id., ¶ 13). Defendant Blackstone then slammed Plaintiff's head into the elevator wall and forced Plaintiff's shoulder into the wall (id.).  When Plaintiff, who was handcuffed behind his back, kicked again at Boykin, Blackstone grabbed Plaintiff and tossed Plaintiff to the ground face first (id.).  Plaintiff suffered an injury to his chin, multiple broken teeth and

---

[7]    As previously indicated, the Court dismissed Defendant Smith from the action.

misalignment of his jaw (id.).  Blackstone followed County

policy concerning the use of force, thus making the Orange

County Sheriff's Department responsible for Blackstone's

actions (id.).

**The Third Incident**

On September 22, 2017 Plaintiff refused to be rehoused

back in the vicinity of his known enemies (id., ¶ 14).

Defendants Arredondo and Owens were going to perform a

filmed escort of Plaintiff to his new housing (id.).  The

filming did not occur, because as soon as Plaintiff refused

to move, Defendant Owens entered Plaintiff's cell, slammed

Plaintiff into the wall, and then took Plaintiff to the

ground (id.).  Defendant Blackstone knelt on Plaintiff's

back, and both Blackstone and Owens dropped their weight

onto Plaintiff (id.).  Defendant Arredondo stood by and

failed to intervene, thus authorizing the excessive force

(id.).

The Fourth Amended Complaint contains the following "Counts":

1.  Failure to protect Plaintiff from the risk of inmate attack,

allegedly in violation of the Eighth Amendment, against Defendants

Blackstone, Porter, Owens, Arredondo, Walewha, Moon, Villa, Sergeant

Martinez, Van Patten, Castro, Coleman, Luu, Chaviro, Laquian and Does

#1 - #6 (Count One);

///

2. Excessive force allegedly in violation of the Eighth Amendment against Defendants Blackstone, Arredondo, Porter, Owens, Serrano, Longrob and Orange County Sheriff's Department (Count Two);

3. Negligence based on the failure to protect allegations against Defendants Blackstone, Arredondo, Porter, Owens and Does #1 - #6 (Count Three); and

4. Negligence based on the excessive force allegations against Defendants Blackstone, Arredondo, Porter, Owens, Serrano, Longrob and Orange County Sheriff's Department (Count Four).

**MOTION TO DISMISS**

I. Defendants' Contentions

In contrast to some of their previous filings, moving Defendants now attack the sufficiency of Plaintiff's allegations to state constitutional claims of "deliberate indifference" and excessive force and to state cognizable negligence claims. Defendants contend:

1. The Third Amended Complaint assertedly fails to allege the deliberate indifference of Defendants Moon, Villa, Porter, Walewha, Arredondo or Blackstone;

2. The Third Amended Complaint assertedly fails to allege that Plaintiff suffered any harm from the September 22, 2017 incident alleged against Defendants Owens and Arredondo;

3.   A prisoner assertedly does not have a right to grievances "handled according to his preferences";

4.   Plaintiff has failed to allege a cognizable excessive force claim with respect to any of the four alleged incidents; and

5.   Plaintiff's negligence claims assertedly are insufficient.

## II.   Standards Governing Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires only that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant receives "fair notice" of the claims against it.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted).  A sufficiently pleaded cause of action "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id.; see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  The requirement that a plaintiff provide "plausible grounds" for her claim does not, however, "impose a probability requirement at the pleading stage."  Twombly, 550 U.S. at 556, 127 S. Ct. 1955.  On the contrary, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable,

1   and that a recovery is very remote and unlikely." Id.

2       (internal quotation marks omitted).

3

4   Williams v. Yamaha Motor Co. Ltd., 851 F.3d 1015, 1025 (9th Cir.

5   2017).

6

7       On motion to dismiss, the Court "must accept as true all of the

8   factual allegations contained in the complaint." Erickson v. Pardus,

9   551 U.S. 89, 94 (2007) (citations omitted); Zucco Partners, LLC v.

10  Digimatic Corp., 552 F.3d 981, 989 (9th Cir. 2009) (on motion to

11  dismiss, court takes as true all non-conclusory factual allegations in

12  the complaint and construes the complaint in the light most favorable

13  to the plaintiff). "[T] be entitled to the presumption of truth,

14  allegations in a complaint or counterclaim may not simply recite the

15  elements of a cause of action, but must contain sufficient allegations

16  of underlying facts to give fair notice and to enable the opposing

17  party to defend itself effectively." Levitt v. Yelp! Inc., 765 F.3d

18  1123, 1135 (9th Cir. 2014). "[T]he factual allegations that are taken

19  as true must plausibly suggest an entitlement to relief, such that it

20  is not unfair to require the opposing party to be subjected to the

21  expense of discovery and continued litigation." Id. (citation

22  omitted). However, a plaintiff is not necessarily required to allege

23  facts supporting every element of a particular claim. See Montanes v.

24  Inventure Foods, 2014 WL 3305578, at *6-7 (C.D. Cal. July 2, 2014)

25  ("Lower courts and treatises agree that a Rule 12(b)(6) need not be

26  granted solely because a complaint fails to plead facts supporting

27  each element of a claim.") (citations omitted). The Court must

28  construe a pro se litigant's pleading liberally and hold a pro se

plaintiff "to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. at 94 (citation omitted).

"Generally, a court may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion." Intri-Plex Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (citation and footnote omitted). The Court may consider "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted).

**III.  Analysis**

    **A.  Federal Claims Against Defendants Blackstone, Porter, Serrano, Owens and Arredondo**

As previously indicated, Defendants Blackstone, Porter, Serrano, Owens and Arredondo previously filed an Answer to the First Amended Complaint. The First Amended Complaint contained factual allegations similar to those contained in the operative Fourth Amended Complaint (see First Amended Complaint, filed August 9, 2018, ¶¶ 5-12 and attachments). Furthermore, Defendants Blackstone, Porter, Serrano, Owens, Arredondo and Walewha previously filed motions to dismiss the Second Amended Complaint without challenging the sufficiency of the failure to protect and excessive force allegations contained therein. The Second Amended Complaint contained allegations similar to those contained in the Fourth Amended Complaint.

///

Courts have disagreed on the issue of whether a court should entertain a defendant's new motion to dismiss an amended pleading when the defendant previously filed an answer or a motion to dismiss and the grounds asserted in the new motion were available to the defendant at the time of the previous filing(s).  See Townsend Farms v. Goknur Gida Madderleri Enerji Imalat Ithalat Ihracat Ticaret Ve Sanayi A.S., 2016 WL 10570248, at *5-6 (C.D. Cal. Aug. 17, 2016) (defendants waived ability to challenge, on a post-answer motion to dismiss an amended complaint, the sufficiency of a claim asserted in the previous pleading which defendants had answered); Securities and Exchange Commission v. Hui Feng, 2016 WL 7443222, at *3 (C.D. Cal. Aug. 4, 2016) (defendants' filing of an answer four months prior to filing a motion for judgment on the pleadings showed defendants were able to defend against fraud claim based on the allegations in the complaint); Brooks v. Caswell, 2016 WL 866303, at *3 (D. Ore. Mar. 7, 2016) ("Allowing a post-answer motion to dismiss an amended complaint where the amendment merely substantiates existing claims would render the Rule 12(b) restriction on post-answer motions meaningless.  As such, this court follows many other circuits and district courts across the country which have held that an amended complaint does not revive the right to file a post-answer motion to dismiss, with the exception that new claims may be attacked."); Brain Life, LLC v. Elekta, Inc., 2012 WL 48024, at *2 (S.D. Cal. Jan. 6, 2012) ("Brain Life") (granting motion to strike a motion to dismiss an amended complaint made after the filing of an answer to a previous complaint; "[i]f [defendant] were to get its way, defendants in multiple-defendant cases could repeatedly revise their tactical approach when, fortuitously, the claims against another defendant are dismissed without prejudice and a

plaintiff is granted leave to amend.  The potential for gamesmanship and delay would be great, particularly in cases involving numerous defendants in which a plaintiff is given multiple opportunities to amend."); compare Appel v. Boston Nat. Title Agency, LLC, 2019 WL 3858888, at *3 (S.D. Cal. Aug. 15, 2019) (defendant who filed answer to initial complaint permitted to make motion to dismiss amended complaint, where plaintiff expanded its claims in amended complaint and defendant moved to dismiss only when it had obtained information supporting a defense); Miller v. Fuhu Inc., 2015 WL 2085490, at *6-7 (C.D. Cal. May 3, 2015) (motion to dismiss amended complaint not untimely despite filing of answer to prior complaint; distinguishing Brain Life).  The Ninth Circuit has not directly addressed this issue. However, the Ninth Circuit has suggested that a court has discretion to entertain a motion to dismiss an amended complaint following a previous motion to dismiss an earlier, superseded complaint.  See In re Apple iPhone Antitrust Litigation, 846 F.3d 313, 317-20 (9th Cir. 2017), aff'd on other grounds, 139 S. Ct. 1514 (2019) (ruling that, under Rule 12(h)(2) of the Federal Rules of Civil Procedure, if a "failure-to-state-a-claim defense" was not raised in a first motion to dismiss under Rule 12(b)(6), it thereafter can be raised only in a pleading, a post-answer motion or at trial; however, because denying a late-filed Rule 12(b)(6) motion can cause delay, a court may entertain such a motion, at least where the motion was not filed for a "strategically abusive purpose" and delay would have "no apparent purpose"; district court's decision to allow late-filed motion to dismiss based on a standing argument deemed harmless).

///

///

The Ninth Circuit's decision in In re Apple iPhone Antitrust Litigation does not necessarily authorize this Court to determine the merits of the sufficiency challenges to the federal claims in the Fourth Amended Complaint raised by Defendants Blackstone, Porter, Serrano, Owens and Arredondo.  These Defendants do not base their sufficiency challenges on a legal ground such as standing, but simply argue that the pleading does not suffice under federal pleading standards.  Again, Defendants so allege despite the fact that they previously answered an earlier complaint containing the same or similar factual allegations and previously filed a motion to dismiss which did not contain the present sufficiency challenges.

The alleged insufficiency of Plaintiff's federal claims has not prevented Defendants from engaging in vigorous discovery.  "A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." OTR Wheel Engineering, Inc. v. West Worldwide Servs., Inc., 897 F.3d 1008, 1024 (9th Cir. 2018) (citation and internal quotations omitted).  Defendants clearly have, and have had, notice of the evidence needed to defend against Plaintiff's allegations in this case.

Under the circumstances, these Defendants' arguments that the Fourth Amended Complaint is insufficient to state plausible claims against them ring hollow and lack merit.  The Motion to Dismiss is denied with respect to Defendants Blackstone, Porter, Serrano, Owens and Arredondo.

///

**B.   <u>Federal Claims Against Defendants Moon and Villa</u>**

As set forth above, Plaintiff alleges that Defendants Moon and Villa failed to protect Plaintiff by mishandling two grievances Plaintiff allegedly submitted prior to the "set-up fights."  In these grievances, Plaintiff reportedly had sought to be rehoused away from his enemies.  Defendants Moon and Villa contend that the Fourth Amended Complaint fails to state a claim for relief under Eighth Amendment standards (Motion to Dismiss, pp. 14-15).

To the extent Defendants Moon and Villa contend that Plaintiff alleges only a mishandling of a grievance not amounting to a due process violation (<u>see</u> Motion to Dismiss, pp. 17-18), Defendants are mistaken.  The Court previously rejected Defendant Walewha's similar construction of similar allegations contained in the Second Amended Complaint (to the effect that Walewha allegedly disregarded Plaintiff's grievance seeking not to be placed in inmate Baker's vicinity) (<u>see</u> "Order, etc.," filed August 1, 2019, pp. 20-21).  In his Opposition, Plaintiff reiterates that his claims against Moon and Villa are not based simply on an alleged mishandling of grievances but rather on these Defendants' alleged failure to protect Plaintiff from the attacks that followed the asserted failure to process the grievances (Opposition, p. 3).

The Eighth Amendment's prohibition against cruel and unusual punishment applies only after conviction.  <u>See Pierce v. Multnomah County, Oregon</u>, 76 F.3d 1032, 1042 (9th Cir.), <u>cert. denied</u>, 519 U.S. 1006 (1996); <u>see also Kingsley v. Hendrickson</u>, 135 S. Ct. 2466, 2475

1   (2015) ("Kingsley").   A pretrial detainee's challenge to jail

2   conditions is governed by the due process clause, not the Eighth

3   Amendment.   See Kingsley, 135 S. Ct. at 2475 (excessive force claim);

4   Castro v. County of Los Angeles, 833 F.3d 1060, 1068-69 (9th Cir.

5   2016) (en banc), cert. denied, 137 S. Ct. 831 (2017) (claim that jail

6   officials failed to protect inmate from assault by another inmate).

7

8       Based on Plaintiff's prior allegation that the alleged wrongdoing

9   occurred following Plaintiff's return to the jail "for a probation

10  violation," the Court previously indicated that the Eighth Amendment

11  standard applied to Plaintiff's claims (see "Order, etc." filed

12  August 1, 2019, pp. 22-23 & n.5; Second Amended Complaint, p. 5 &

13  attachment p. 1).   The parties have not argued otherwise.   However, it

14  appears that, during the period of the alleged wrongdoing, Plaintiff

15  may have been detained at the jail on pending probation violation

16  proceedings, rather than as a result of a court order deeming

17  Plaintiff to have violated his probation.[8]

18

19      [8]   The Court takes judicial notice of the docket and
    documents filed in Petitioner's habeas corpus action in this

20  Court, Rosenblum v. Biter, SA CV 19-758-JVS(E).   See Mir v.
    Little Company of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988)

21  (court may take judicial notice of court records).   The lodgments
    in that habeas action show that:

22

23      In 2015, a jury found Plaintiff guilty of attempted
    robbery and misdemeanor battery (Court of Appeal Case No.
    G052041, Reporter's Transcript (Respondent's Lodgment 1,

24  Part 5), at 1068-70; Clerk's Transcript (Respondent's
    Lodgment 3, Part 2), at 433-34).   The court suspended

25  sentence and imposed three years' probation (Court of Appeal
    Case No. G052041, Reporter's Transcript (Respondent's

26  Lodgment 1, Part 5), at 1126-34).

27      On May 1, 2017, the State charged Plaintiff with a
    probation violation, i.e., battery on a bus operator (Court

28  of Appeal Case No. G055848, Clerk's Transcript (Respondent's
                                            (continued...)

The issue of whether a person confined during the pendency of probation violation proceedings should be treated as a pretrial detainee or a convicted prisoner for purposes of a constitutional challenge to jail conditions is an issue upon which courts have differed.  See Reinoso-Delacruz v. Ruggerio, 2019 WL 2062434, at *2-3 (D. Conn. May 9, 2019) (inmate awaiting determination of probation violation proceedings considered a pretrial detainee for purposes of evaluating claim that jail officials failed to protect inmate from assault by a fellow inmate); Chrisco v. Hayes, 2017 WL 5404191, at *4 (D. Colo. Nov. 14, 2017) ("Pretrial detainees include incarcerated individuals awaiting trial on pending criminal charges and individuals awaiting adjudication on pending accusations that they have violated the terms of their probation or parole.") (citations omitted); Hill v. County of Montgomery, 2018 WL 2417839, at *2 (N.D.N.Y. May 29, 2018) (status of inmate whose probation violation proceedings were pending "more akin to that of a pretrial detainee") (dictum; citing cases); Weishaar v. County of Napa, 2016 WL 7242122, at *6-7 (N.D. Cal. Dec. 15, 2016) (jail inmate arrested for probation violation deemed to be a pretrial detainee for purposes of claim that jail officials failed to take measures to prevent inmate's suicide); compare Ford v. Grand Traverse County, 2005 WL 2572025, at *1 n.1 (W.D. Mich. Oct. 12, 2005) (Eighth Amendment standard applied); see also Palmer v. Marion County, 327 F.3d 588, 592-93 (7th Cir. 2003) (pre-Kingsley case noting "uncertainty" in the law but deeming issue "purely academic" because,

---

[8](...continued)
Lodgment 11), at pp. 96-98). On November 28, 2017, after the incidents alleged in the Fourth Amended Complaint, the court found Plaintiff in violation of his probation and imposed a prison sentence (id., at 270-71).

at that time, the Eighth Amendment and due process standards were the same); Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001) (admitting to "some uncertainty" on the issue).  In the only directly related Ninth Circuit case, a pre-Kingsley unpublished decision, the Ninth Circuit applied the due process reasonableness standard to a claim of excessive force during an inmate's "pre-hearing detention for a probation violation."  Ressy v. King County, 520 Fed. App'x 554, at *1 (9th Cir. 2013).

In the present case, Plaintiff's allegations are sufficient under either the Eighth Amendment standard or the due process standard. Plaintiff attaches to the Fourth Amended Complaint a grievance, dated July 3, 2017, in which Plaintiff requested a housing move to "module 'J'" (Fourth Amended Complaint, second exhibit).  This document, although somewhat difficult to read, contains Plaintiff's allegations that he had enemies at the jail with whom he previously had had "violent altercations" and "gassing attacks" (id.).  Plaintiff identified the enemies, among others, as Baker and Renteria, and said "D.I.A. [sic]" had the "enemies'" names (id.).  The document appears to reflect that Defendant Villa received the document on July 3, 2017 and bears a check in the box marked "handled as inmate request" (id.). The document does not indicate that the grievance was assigned to any jail official or that any response was returned to Plaintiff (id.). Liberally construed, Plaintiff's allegations, together with the exhibit described above, indicate that Defendant Moon failed to turn in this grievance, and that, after Plaintiff allegedly resubmitted the grievance, Defendant Villa simply screened out the grievance.  The contents of the grievance indicated that violence previously had

occurred between Plaintiff and other inmates including Baker and
Renteria (by name) and others (on a referenced jail listing).  For
purposes of a motion to dismiss, these allegations suffice to allege:
(1) the objective unreasonableness of the asserted failure of Moon and
Villa to process the grievance so that Plaintiff could be moved away
from his enemies; and (2) the subjective awareness of Moon and Villa
that Plaintiff would be in danger of physical attack if he were not
moved away from his enemies.  Hence, the Fourth Amended Complaint
suffices to plead either an Eighth Amendment claim or a due process
claim against Moon and Villa.

### C.  <u>State Law Claims Against All Defendants</u>

The Fourth Amended Complaint contains two negligence claims.
Plaintiff asserts "Count Three" for negligence based on the failure to
protect allegations, against Defendants Blackstone, Porter, Arredondo,
Owens and Does #1 through #6.  Plaintiff asserts "Count Four" for
negligence based on the excessive force allegations, against
Defendants Blackstone, Porter, Serrano, Arredondo, Longrob and Owens.

Defendants contend these claims fail to allege the elements of a
negligence claim under California law (Motion to Dismiss, pp. 21-22).
According to Defendants, these claims "fail the basic test of
apprising any defendant so alleged of what actions or inactions create
the basis for that individual's liability" (<u>id.</u>, p. 21).
///
"In order to prove facts sufficient to support a finding of
negligence, a plaintiff must show that the defendant had a duty to use

due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." Hayes v. County of San Diego, 57 Cal. 4th 622, 629, 160 Cal. Rptr. 3d 684, 305 P.3d 252 (2013) (citations, quotations and brackets omitted).  However, a plaintiff "may plead negligence . . . in general terms." Singer v. Superior Court of Contra Costa County, 54 Cal. 2d 318, 323, 5 Cal. Rptr. 697, 353 P.2d 305 (1960) (citation omitted); see also Foltz v. Johnson, 16 Cal. App. 5th 647, 653 n.2, 224 Cal. Rptr. 3d 506 (2017). For the reasons stated above, Plaintiff's negligence claims, based on the allegations supporting his federal claims for failure to protect and excessive force, are sufficient.  See Mendoza v. County of San Diego, 2018 WL 1185230, at *5 (S.D. Cal. Mar. 7, 2018) (negligence claim based on same allegations as cognizable federal excessive force claim sufficient); see also Young v. County of Los Angeles, 655 F.3d 1156, 1170 (9th Cir. 2011) (plaintiff who sufficiently alleged a Fourth Amendment excessive force claim also pleaded a sufficient negligence claim under California law). McFarland v. City of Clovis, 2017 WL 1348934, at *19 (E.D. Cal. Apr. 10, 2017) ("A peace officer's use of excessive force may form the basis for a state law negligence claim.") (citations omitted); Machado v. Nguyen, 2014 WL 2795474, at *8 (N.D. Cal. June 19, 2014) (plaintiffs who sufficiently alleged a constitutional deliberate indifference claim also sufficiently alleged claims for wrongful death and medical malpractice based on same factual allegations).

///

///

**REQUEST FOR SUBSTITUTION**

As indicated above, the Fourth Amended Complaint alleges that Defendant John Doe #4, a classification deputy, and Defendant John Doe #5, a supervisor, approved decisions to house Plaintiff in the vicinity of his "known enemies."  Plaintiff seeks to substitute A. Montoya for Defendant John Doe #4 and Defendant D. Braham for Defendant John Doe #5 in the Fourth Amended Complaint.  The moving Defendants argue that amendment would be futile because: (1) the Request for Substitution allegedly is untimely; (2) the Fourth Amended Complaint assertedly fails to state a cognizable Eighth Amendment claim against Defendants John Doe #4 and John Doe #5; (3) the claims against these Defendants allegedly are untimely; and (4) Plaintiff supposedly previously substituted Defendants Moon and Villa for Defendants John Does #4 and #5.

Defendants first argue that Plaintiff engaged in undue delay in seeking to substitute Montoya and Braham as Defendants.  Defendants contend that Plaintiff became aware of these Defendants' identities upon receipt of documents allegedly produced in discovery and served on Plaintiff on February 19, 2019 ("Defendants' Opposition to Plaintiff's Motion to Substitute, etc.," p. 3; Declaration of Jonathan C. Bond & Ex. A attached thereto).  Plaintiff contends he became aware of these Defendants' identities only upon receipt of Defendant Arredondo's supplemental response to Plaintiff's Interrogatory No. 10, which Plaintiff assertedly received in September of 2019 (Request for

///

///

Substitution, p. 2 & Ex. A-1).[9]  The documents upon which Defendants
rely purportedly show, at most, that Montoya and/or Brahman were
involved in ordering Plaintiff's rehousing <u>after</u> the alleged
incidents; these documents do not necessarily indicate Montoya and/or
Brahman ever approved Plaintiff's housing near "known enemies."  Thus,
Defendants have not demonstrated any lack of diligence by Plaintiff in
seeking to substitute Montoya and Braham for Doe Defendants.

Defendants also argue that the two-year statute of limitations
set forth in California Code of Civil Procedure section 335.1 bars
Plaintiff's claims against Montoya and Brahman.  It is true that
section 335.1 applies to Plaintiff's section 1983 claims as well as to
his state law claims.  <u>See</u> <u>Wilson v. Garcia</u>, 471 U.S. 261, 275 (1985).
However, Defendants fail to address the possible applicability of
California Code of Civil Procedure section 352.1, which provides for a
two-year period of tolling for a claim challenging the conditions of
confinement where, at the time of accrual, the plaintiff is
"imprisoned on a criminal charge."[10]  Prior to the filing of this
action, the California Court of Appeal held that section 352.1 does
not apply to pretrial detainees.  <u>See</u> <u>Austin v. Medicis</u>, 21 Cal. App.
5th 577, 230 Cal. Rptr. 3d 528 (2018).  However, in <u>Elliott v. City of</u>
<u>Union City</u>, 25 F.3d 800, 802-03 (9th Cir. 1994), the Ninth Circuit

---

[9]   In the Court's August 16, 2019 Minute Order ruling on
Plaintiff's July 15, 2019 motion to compel, the Court <u>inter alia</u>
ordered Defendant Arredondo to provide a further response to
Interrogatory No. 10.

[10]   State law determines the applicability of tolling
doctrines for purposes of section 1983 claims.  <u>See</u> <u>Hardin v.</u>
<u>Straub</u>, 490 U.S. 536, 539 (1989); <u>Cervantes v. City of San Diego</u>,
5 F.3d 1273, 1275 (9th Cir. 1993).

ruled that the predecessor to section 352.1 tolled a claim arising out of an arrest during the continuous period beginning at the time of the arrest and concluding with the arrestee's release from prison following conviction.  See also Jones v. Blanas, 393 F.3d 918, 929-30 (9th Cir. 2004), cert. denied, 546 U.S. 820 (2005) (recognizing that, while "the literal language" of section 352.1 did not apply to the claims of a civil detainee, principles of equitable tolling could apply to the claims of "an individual continuously detained under civil process").  As indicated above, it is unclear whether Plaintiff should be considered to have been a pretrial detainee or a convicted prisoner at the time of the incidents.  Furthermore, neither side addresses  the issue of tolling during the pendency of a grievance and neither side addresses the issue of equitable tolling.


Defendants also argue that the claims against Montoya and Braham cannot relate back to the time of filing of the original Complaint under Federal Rule of Civil Procedure 15(c)(1).  However, Defendants fail to address whether these claims could relate back to the First Amended Complaint (which asserted claims against fictitious Defendants).  Nor do Defendants address the possible applicability of California state law relation back rules.  See Butler v. Nat. Community Renaissance of Calif., 766 F.3d 1191, 1201 (9th Cir. 2014) (because the limitations period derives from state law, a court may apply either state or federal relation back rules, "whichever applies the more permissive relation back standard") (citation and quotations omitted).

///

///

33

1      Given these unaddressed issues and unaddressed possibilities, the

2 Court declines to rule at this time that the claims against Montoya

3 and Braham necessarily are time-barred.

4

5      Finally, the Court rejects Defendants' specious argument that

6 Plaintiff "already" named John Doe #4 and John Doe #5 as Defendants

7 Moon and Villa.  Moon and Villa were substituted for John Does in the

8 Second Amended Complaint, not the Fourth Amended Complaint.  See Hal

9 Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th

10 Cir. 1989) ("an amended pleading supersedes the original").

11

12                                **ORDER**

13

14      The Motion to Dismiss is denied.  Within fourteen (14) days of

15 the date of this Order, Defendants Blackstone, Porter, Serrano, Owens,

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1    Arredondo, Walewha, Moon and Villa shall file an Answer to the Fourth

2    Amended Complaint.

3

4         The Request for Substitution is granted.

5

6         IT IS SO ORDERED.

7

8

9         DATED: January 22, 2020.

10

11

12   _____

13                JAMES V. SELNA
                 UNITED STATES DISTRICT JUDGE

14

15

16   PRESENTED this 9th day

17   of January, 2020, by:

18

19   _____
              /s/
20        CHARLES F. EICK
     UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28